1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CYNTHIA SHEPARD, | ) | 1:04cv6449 DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## **BACKGROUND**

Plaintiff Cynthia Shepard ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for period of disability and disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## **FACTS AND PRIOR PROCEEDINGS[2]**

Plaintiff filed an application for period of disability and disability insurance benefits on

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On April 7, 2005, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

1  July 12, 2002, alleging disability since January 1, 1993 due to hepatitis C, degenerative bone

2  disease and irritable bowel syndrome ("IBS").  AR 75-78, 92.  After being denied both initially

3  and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge

4  ("ALJ").  AR 61-64, 67-70, 71.  On March 30, 2004, ALJ James E. Ross held a hearing.  AR 31-

5  48.  On April 29, 2004, ALJ Ross found that Plaintiff was not disabled.  AR 15-23.  The Appeals

6  Council denied review on July 21, 2004.  AR 8-11.

7      Hearing Testimony

8  _____ALJ Ross held a hearing in Bakersfield, California, on March 20, 2004.  AR 33.  Plaintiff

9  appeared with her attorney, Geoffrey Hayden.  AR 31.

10      Plaintiff testified that she was 49 years old at the time of the hearing and had been

11  married for 18 years.  AR 35.  She completed high school and had a year and a half of college.

12  AR 35.  She was 5'2" tall and weighed 170 pounds.  AR 36.  She has a driver's license and drives

13  a car.  AR 36.

14      Plaintiff worked as a proctor for one day in 2001, but was unable to continue because she

15  had to climb stairs and sit for long periods.  AR 36.  She also did research for the agriculture

16  department at UC Davis in 1998, but left after two months because of her physical problems.  AR

17  37.  Plaintiff worked as a rental agent in 1989 or 1990, a receptionist in a dental office in 1991.

18  AR 37.  She has also done electronics assembly.  AR 37.

19      Prior to March 1996, Plaintiff explained that she started becoming tired and began

20  suffering from chronic diarrhea which required hospitalization.  AR 38.  She received a blood

21  transfusion in 1979, but did not know that she had hepatitis C prior to March 1996.  AR 38.  In

22  1990, she began having severe pain that started in her neck and then went down her back.  AR

23  39.  In 1991, she had knee surgery after slipping on grass and injuring her knee.  AR 40.  The

24  surgery affected her ability to walk prior to March 1996.  AR 40.

25      In 1994, Plaintiff had neck surgery to correct bulging discs.  AR 41.  This caused severe

26  pain in her neck that spread to her shoulders and back.  AR 41.  She had a second neck surgery in

27  1997 because the neck fusion did not solve the pain in her back.  AR 41.

28      Prior to March 1996, she had problems with IBS.  AR 41.  It caused constant diarrhea and

2

1   she had to leave her job because of it.  AR 41-42.  She needed to use the restroom an average of

2   seven times per day and had to use a diaper for protection.  AR 46-47.

3          Prior to 1996, she thought that she could stand for ten minutes before needing to sit

4   down, and could lift five pounds.  AR 42.  She could not kneel, stoop or squat to the ground.  AR

5   42.  Bending forward from the waist also caused her problems.  AR 42.  She had problems

6   grabbing things with her hands and dropped things often.  AR 43.

7          She has been diagnosed with fibromyalgia and indicated that she had it prior to March

8   1996.  AR 43.  Prior to 1996, she took medications, one of which caused her to not know where

9   she was.  AR 43-44.

10         Prior to March 1996, she watched television during the day but had to go lay down with a

11   special pillow after a while.  AR 44.  Her husband did the housework and she cooked and did the

12   grocery shopping once or twice a month.  AR 44.  She had trouble dressing and cleaning herself,

13   putting on her shoes, and taking a shower.  AR 44-45.  She had to lay down during the day.  AR

14   45. She tried exercising but was unable to do it.  AR 45.

15         Regarding the assessment completed by Dr. Sorenson in August 2003, Plaintiff explained

16   that he had not treated her since 1997 but that her husband drove to see Dr. Sorenson so that he

17   could fill out the form.  AR 47.

18         <u>Medical Evidence</u>

19         In March 1995, Plaintiff was evaluated by neurologist Durell D. Sharbaugh, M.D.  She

20   complained of back spasms, bilateral neck and shoulder pain, headaches, nocturnal numbness of

21   the hands, and periodic numbness of the legs.  He diagnosed nocturnal paresthesias of the hands,

22   thoracic pain now centered bilaterally in the neck and radiating to the head, history of IBS and

23   possible history of stress.  He recommended testing to exclude carpal tunnel syndrome and an

24   MRI of the neck.  AR 125-126.

25         On April 6, 1995, Dr. Sharbaugh indicated that nerve conduction studies in March 1996

26   showed bilateral carpel tunnel syndrome, but Plaintiff was reluctant to have surgery and chose

27   instead to be treated with wrist braces.  He also diagnosed diffuse neck and mid back pain with

28   C3-4 disc space narrowing and noted that her symptoms have not responded to physical therapy.

1    AR 119.

2        A March 1995 x-ray and April 1995 MRI of the cervical spine showed disc bulges and

3    hypertrophic spurring at C4-5 and C5-6.  AR 121, 128.  There were also small disc protrusions at

4    T6-7 and T7-8, on the right.  AR 121.

5        Plaintiff saw Dr. Sharbaugh again on April 20, 1995, and continued to complain of

6    constant bilateral neck pain and several episodes of mid back pain radiating into her intercostal

7    region.  A neurologic screening exam of her upper and lower extremities was unremarkable, but

8    there was considerable muscle tightness in the areas of disc degeneration.  Dr. Sharbaugh

9    recommended conservative treatment and indicated that Plaintiff should see a neurosurgeon in

10   the future if her symptoms increase.  AR 118.

11       On May 3, 1995, Plaintiff began seeing neurosurgeon Richard H. Thorpe, M.D.  She

12   complained of neck pain that radiated throughout her arms and hands and indicated that she

13   couldn't do anything because the pain increased as soon as she becomes active.  Her general

14   physical examination was essentially normal.  From a neurologic point of view, she seemed to be

15   functioning quite well.  AR 148.

16       On May 17, 1995, Plaintiff continued to complain of neck pain and upper extremity

17   discomfort.  AR 147.

18       On June 8, 1995, Plaintiff underwent anterior cervical fusion to repair the disc spaces.

19   AR 146.

20       Plaintiff returned to Dr. Thorp on June 21, 1995.  Dr. Thorp indicated that he believe she

21   was doing quite well, but has a tendency to "baby" herself.  With encouragement, she performed

22   a full range of neck movement without difficulty.  He encouraged her to return to her usual

23   household chores.  AR 143.

24       On July 17, 1995, Plaintiff saw Dr. Thorp.  He released her to full activity, but prescribed

25   medication for possible mild reactive depression.  Neurologically, Plaintiff was doing well.  AR

26   142.

27       On August 16, 1995, however, Plaintiff complained of pain in her neck and numbness in

28   her arms.  Her examination was remarkably benign.  When she was distracted, she performed a

4

good range of neck motion without difficulty.  Dr. Thorp encouraged Plaintiff to return to her usual lifestyle and indicated that he did not think that significant cervical disc disease was causing her complaints.  AR 141.

On October 2, 1995, Plaintiff returned to Dr. Thorp after falling on her back and neck and experiencing considerable neck discomfort.  She moved about easily, and when distracted, was able to move her neck fairly well.  Based on x-rays and her examination, Dr. Thorp believed that Plaintiff suffered a musculoligamentous-type injury but did not damage her surgical constructions.  AR 138-139.  Plaintiff continued complaining of pain on October 23, 1995, but when distracted, she has a fairly good range of neck movement.  AR 138.

Plaintiff returned to Dr. Thorp on November 1, 1995, and appeared a "little angry" and indicated that she felt terrible.  Although she complained of neck pain, she had excellent strength in all major muscle groups of the upper and lower extremities.  When distracted and talking actively, she moved her neck spontaneously.  However, when asked to carry out a range of movements, she is reluctant and complains of discomfort.  A repeat MRI failed to reveal any significant change.  Dr. Thorp opined that her discomfort is a mild musculoskeletal discomfort and indicated that a major functional overlay exaggerates her responses.  He suggested rehabilitative therapy, which Plaintiff was reluctant to pursue.  AR 136.

On November 16, 1995, Plaintiff saw M.E. River, M.D.  Plaintiff indicated that she was doing well until she fell in September.  Dr. Rivers described Plaintiff as a moderately obese woman.  AR 170.  Plaintiff did not have any focal deficits and review of her MRIs, both before and after surgery, did not suggest ongoing impingement.  AR 171.  He recommended physical therapy.  AR 171.

In July 1996, Raymond T. Mirise, M.D. examined Plaintiff and concluded that she had fibromyalgia.  She had myofascial tenderness in certain areas but had good range of motion, no muscle spasms and excellent strength.  He recommended that she stop taking narcotic medications and muscle relaxants and try a regular aerobic exercise program.  AR 150-151.

In December 1996, Plaintiff saw Thomas F. Mitts, M.D. for complaints of debilitating back, neck and shoulder pain.  Upon examination, Dr. Mitts indicated that Plaintiff was

1   overweight.  He also indicated that Plaintiff had a diagnosis of fibromyalgia, but based on her

2   statements, he was not sure she had it.  He opined that breast reduction surgery would be helpful.

3   AR 161.

4          On June 25, 1997, Plaintiff underwent breast reduction surgery AR 158, 161.

5          On July 24, 1997, Plaintiff told Dr. Mitts that she felt better and asked if she could get

6   into her pool.  AR 157.  On August 13, 1997, Plaintiff asked if she could "walk now and get

7   sweaty."  She also indicated that she was doing modified swim strokes in her pool.  AR 157.  In

8   September 1997, she told Dr. Mitts that she was going to San Diego for two weeks and was

9   going to try and play a little golf.  AR 156.

10          In October 1997, Plaintiff complained of right upper chest pain but Dr. Mitts found no

11  physical abnormalities.  AR 155.

12          On October 15, 1997, Plaintiff saw orthopedist Robert M. Mochizuki, M.D., for a

13  synovial cyst in her right index finger.  She also complained of neck pain.  AR 177-178.

14          In April 2001, Plaintiff saw Dr. Mochizuki after falling in her pool while washing it

15  down.  He diagnosed right knee medial collateral ligament strain, right ankle strain and right foot

16  sprain.  AR 173.

17          In July 2001, Plaintiff saw Roger C.F. Wu, M.D., for complaints of abdominal pain and

18  recent severe diarrhea.  He indicated that Plaintiff needed testing, including screening for

19  hepatitis since she had a blood transfusion prior to 1991.  AR 193-194.

20          On September 11, 2002, State Agency physician Elpidio Fonte, M.D., completed a

21  Physical Residual Functional Capacity Assessment form.  He opined that Plaintiff could

22  occasionally lift 20 pounds, 10 pounds frequently, could stand and/or walk about six hours in an

23  eight hour workday, and could sit about six hours in an eight hour workday.  AR 269.  She could

24  not reach above shoulder level and could not do forceful grasping or twisting.  AR 271.  These

25  findings were affirmed on March 7, 2003.  AR 275.

26          On September 28, 2001, Plaintiff underwent a liver biopsy and abdominal ultrasound.  A

27  clinical history of hepatitis C was noted.  AR 195, 196.  The biopsy revealed chronic hepatitis C,

28  by history, grade II inflammation and stage III fibrosis.  There was no obvious cirrhosis.  AR 198.

1   On October 2001, Plaintiff saw Ajit Arora, M.D. for evaluation of her hepatitis C.  Dr.

2   Arora started Plaintiff on interferon therapy.  AR 207.  She had side effects from the treatments

3   and they were stopped in April 2002.  AR 222, 256.

4   In December 2002, Plaintiff continued to complain of pain all over her body, especially in

5   her neck, back both hands, fingers, elbows, both hips and both knees.  Juliane C. Tran, M.D.,

6   diagnosed total body pain, most likely fibromyalgia, post cervical fusion pain, and hepatitis C.

7   AR 209.

8   In January 2003, Plaintiff saw Christine M. Deeths, M.D.  Dr. Deeths indicated that

9   Plaintiff has had a multitude of symptoms caused by hepatitis C since approximately 1991, but

10  definitely back to at least 1993.  She indicates that Plaintiff "most likely" had significant

11  symptoms in 1996, which cause disability and the inability to work, sit or stand.  AR 250.

12  Plaintiff started interferon treatments again in January 2003.  AR 253.

13  In June 2003, Dr. Deeths completed a Physical Capacities Evaluation.  She opined that

14  Plaintiff could sit for two hours in an eight hour work day, stand for one hour and walk for one

15  hour.  She could frequently lift up to five pounds and occasionally lift up to 20 pounds.  She

16  could not use her hand for pushing and pulling of arm controls and could never crawl, climb or

17  reach.  AR 283.  Dr. Deeths listed Plaintiff's primary impairments as hepatitis C, causing severe

18  fatigue and inability to complete tasks.  Dr. Deeths began treating Plaintiff in December 2002,

19  but she believes her symptoms began before that date.  AR 284.

20  In August 2003, Dr. Sorenson filed out a questionnaire in which he opined that Plaintiff

21  could sit for two hours, stand for two hours and walk for two hours.  He believed Plaintiff needed

22  to lie down or elevate her legs for four to six hours out of an eight hour workday.  He indicated

23  that these restrictions have existed since January 1993.  AR 285.

24  ALJ's Findings

25  _____The ALJ determined that, prior to Plaintiff's date last insured of March 31, 1999, she had

26  the severe impairment of "neck pain status post-surgery in June 1995, aggravated by a fall in

27  October 1995."  AR 22.  However, her residual functional capacity did not preclude her from

28  returning to her past relevant work as a receptionist and leasing agent.  AR 23.

7

1

## SCOPE OF REVIEW

2      Congress has provided a limited scope of judicial review of the Commissioner's decision

3  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

4  the Court must determine whether the decision of the Commissioner is supported by substantial

5  evidence.  42 U.S.C. 405(g).  Substantial evidence means "more than a mere scintilla,"

6  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

7  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

8  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

9  401.  The record as a whole must be considered, weighing both the evidence that supports and

10  the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

11  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

12  apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

13  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

14  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

15  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

16  Cir. 1987).

17

## REVIEW

18      In order to qualify for benefits, a claimant must establish that he is unable to engage in

19  substantial gainful activity due to a medically determinable physical or mental impairment which

20  has lasted or can be expected to last for a continuous period of not less than 12 months.  42

21  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

22  such severity that he is not only unable to do her previous work, but cannot, considering his age,

23  education, and work experience, engage in any other kind of substantial gainful work which

24  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

25  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

26  Cir. 1990).

27      In an effort to achieve uniformity of decisions, the Commissioner has promulgated

28  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

1    C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3]  Applying this process in this case, the ALJ

2    found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

3    disability; (2) has an impairment or a combination of impairments that is considered "severe"

4    (neck pain status post-surgery in June 1995, aggravated by a fall in October 1995) based on the

5    requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or

6    combination of impairments which meets or equals one of the impairments set forth in Appendix

7    1, Subpart P, Regulations No. 4; (4) can perform her past relevant work as a receptionist or

8    leasing agent.  AR 22-23.

9         Plaintiff argues that the ALJ failed to properly consider the affects of her obesity on her

10   ability to work.

11                              **DISCUSSION**

12        Plaintiff contends that the ALJ failed to properly consider the "interactive affects" of her

13   obesity on her ability to work.  Opening Brief, at 3.  Specifically, she argues that the ALJ failed

14   to properly assess the effects of her obesity pursuant to SSR 02-1p.

15        Pursuant to SSR 02-1p, obesity must be considered throughout the sequential evaluation

16   process, including when determining an individual's RFC.  "The combined effects of obesity

17   with other impairments may be greater than might be expected without obesity."  SSR 02-1p.

18   The Ninth Circuit recently held that, pursuant to SSR 02-1p, the ALJ must consider obesity in

19   determining RFC based on the information in the case record.  *Burch v. Barnhart*, 400 F.3d 676,

20   683 (9th Cir. 2005).

21        Here, the ALJ did not discuss Plaintiff's obesity.  This was not error, however, as the

22   record contained little evidence of Plaintiff's weight prior to March 31, 1996, and *no* evidence of

23   any resulting impairments.  *See Burch*, 400 F.3d at 683.  Plaintiff claims that during the relevant

24   period, she was 5'2" and 200 pounds, yet the documentation to which Plaintiff cites is from

25   treatment received almost four months after her date last insured.  AR 150.  Plaintiff also points

26   to a December 1996 exam by Dr. Mitts, also months after her date last insured, in which he

27

28   _____
              [3] All references are to the 2000 version of the Code of Federal Regulations unless otherwise noted.

9

opined that her back, shoulder and breast pain seem to be secondary to her large breast size and "generalized modest obesity."  AR 161.  A Title II claimant has the burden of proving that her disability began on or before the date her disability insurance expired.  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).

Even assuming the evidence of Plaintiff's weight was relevant to the time period in question, the evidence does not demonstrate that she suffered any limitations as a result of her obesity, either alone or in combination with other impairments.  *Burch,* 400 F.3d at 683 (finding that the ALJ's failure to consider obesity was proper where there was no evidence before the ALJ, and none in the record, which stated that claimant's obesity limited her functioning).  SSR 02-1p specifically provides that the ALJ will not make assumptions about the severity or functional effects of obesity combined with other impairments, but rather must evaluate each case based on the information in the case record.  There is no such evidence here.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, Cynthia Shepard.

IT IS SO ORDERED.

**Dated:   August 3, 2005            /s/ Dennis L. Beck            **
3b142a
UNITED STATES MAGISTRATE JUDGE